## Louisville & Nashville Railroad Company v. Russellville Home Telephone Company.

(Decided March 9, 1915.)

### Appeal from Logan Circuit Court.

Telegraphs and Telephones—Streets—Vacation—Removal of Telephone Poles Lawfully Constructed—Compensation.—The owners of property abutting on a public street that has been vacated in the manner provided by law can not compel a telephone company not a party to the proceedings, which, with the consent of the city and pursuant to a valid franchise, had, prior to the vacation, constructed its poles and wires on the street, to remove them without being compensated for the damages.

WILBUR F. BROWDER, B. D. WARFIELD, C. H. MOORMAN and BROWDER & BROWNING for appellant.

S. R. CREWDSON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

The question presented on this appeal is whether or not the owners of property abutting on a public street that has been vacated in the manner provided by law may compel a telephone company not a party to the proceedings, which, with the consent of the city and pursuant to a valid franchise, had prior to the vacation constructed its poles and wires on the street, to remove them without compensation.

The question arises in the following way:

In the year 1906 the Russellville Home Telephone Company purchased from the city of Russellville a valid 20-year franchise to construct and operate a telephone system over the entire city and to build for that purpose telephone lines attached to poles located along the edges

of the streets of the city. Pursuant to the franchise, and
with the consent of the city, the telephone Company
erected eight or nine poles on the north side of Center
Street, and strung wires thereon. After this had been
done the Louisville & Nashville Railroad Company deter-
mined to build a new passenger station to be located at
the junction of the Memphis line division, and the Owens-
boro and Nashville division, and about half a mile west
of the old passenger station, which formerly stood at the
foot of Main Street. To do this it became necessary to
enclose that part of Center Street extending from a point
four feet east of the Owensboro & Nashville Railroad
right of way to a point on the western boundary of the
city, fifty or sixty feet from the Memphis line division,
and to open and construct and turn over for public use
a new section of Center Street at a point two or three
hundred yards south of the old street. Thereupon the
city council, pursuant to Section 3562, Kentucky Stat-
utes, passed an ordinance closing that part of Center
Street above referred to, and opening up the new section
of that street. Upon the adoption of the ordinance an
action was filed in the Logan Circuit Court by the city
attorney against all of the abutting landowners on that
part of Center Street ordered to be closed by the ordi-
nance, and a judgment of vacation regularly entered.
At the time the vacation suit was instituted the land
abutting on the north side of Center Street, and between
the termini of the closed section, belonged to the rail-
road, while the land abutting on the south side belonged
to David W. Caldwell and J. W. McLaughlin and the
railroad. Some time after the vacation proceedings
Caldwell and McLaughlin conveyed their title to the rail-
road company. During the year 1912 the railroad re-
quested the telephone company to remove its poles and
wires from its property. The telephone company refused
to do so unless the railroad company would pay the cost
of removal, amounting to $594.89. The railroad company
refused to pay this, or any other sum, and brought this
action to require the telephone company to remove the
poles and wires. The trial court refused the relief asked,
and the railroad company appeals.

The facts are admitted and the question presented is
one of law. Briefly presented the argument for the rail-
road is as follows: The city had but an easement in the
land covered by the street. When it ceased to be used for

street purposes the title thereto vested in the owners of the abutting property on each side of the street. The telephone company constructed its poles and wires on the street subject to the unquestionable right of the city to discontinue the use of the street whenever in its discretion it became necessary or desirable to do so.

The city having only an easement in the land, could confer on the telephone company no rights after that easement was abandoned. When, therefore, the street was abandoned, the telephone company's contract rights ceased. The title to the street having reverted to the railroad, the poles and wires are now on its private property, and it may require the telephone company to remove them. It is unnecessary for us to determine what the rights of the city would have been had it seen fit under its police power to enact an ordinance requiring the telephone company to remove its poles and wires or to make the telephone company a party to the vacation proceedings. That question is not here because no such action was taken. Not being a party to the vacation proceedings, the telephone company's rights were in no wise concluded by the judgment closing the street. It is admitted that the telephone company had a valid franchise authorizing it to occupy the streets of the city, and that the poles and wires were placed on Center Street with the consent of the city. At that time the street was subject to the city's regulation and control, and the city had full power to contract with the telephone company. Even if the franchise was granted subject to the right of the city to vacate the street in question, the telephone company's rights could not be taken away by a proceeding to which it was not a party. Certainly the city, without the enactment of an ordinance pursuant to its police power, or without making the telephone company a party to the vacation proceedings, could not voluntarily authorize and suffer vacation proceedings to be had, and thus impair the telephone company's contract rights, without a hearing of any kind. As the city had the right to grant the franchise for a period of 20 years, and to authorize the telephone company to place its poles and wires on the street in question, and as the city never took, even if it could take, any valid action requiring the telephone company to remove its poles and wires from the street in question, we conclude that the railroad company, upon the abandonment of the street, took the property

subject to the burden which had been lawfully placed thereon by the city. To permit the railroad under these circumstances to compel the telephone company, without compensation, to remove its poles and wires, would impair the obligation of a valid contract. It follows that the relief asked by the railroad company was properly denied.

Judgment affirmed.